# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **MARK D. ZIMMERMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:05-0740 |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered September 8, 2005 (Doc. No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings. (Doc. Nos. 10-11.)

The Plaintiff, Mark D. Zimmerman, (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on August 19, 2003 (protective filing date), alleging disability as of June 1, 2000, due to paranoid schizophrenia, deterioration of the joints, arthritis, depression, high blood pressure, high cholesterol, emphysema, prostatitis, and gastric reflux disease. (Tr. at 15, 61-64, 86.) The claims were denied initially and upon reconsideration. (Tr. at 32-36, 38-40.) On May 10, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 41.) The hearing

was held on March 2, 2005, before the Honorable Douglas N. Jones. (Tr. at 332-69.) By decision dated May 23, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-23.) The ALJ's decision became the final decision of the Commissioner on August 9, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-9.) Claimant filed the present action seeking judicial review of the administrative decision on September 8, 2005, pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

> which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: chronic obstructive pulmonary disease, chronic prostatitis, gastroesophageal reflux disease, hypertension, degenerative joint disease in both shoulders, chronic low back pain, bipolar disorder NOS, depressive disorder NOS, and personality disorder NOS. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant had a residual functional capacity to perform medium level work, noting the following limitations:

> only occasional climbing, of stairs or ladders, occasional exposure to unprotected

> heights or hazardous machinery, occasional exposure to dust, fumes or other air born pollutants, no detailed instruction, no extended periods of concentration, only occasional interaction with supervisors and co-workers, no interaction with the general public, only occasional changes in work setting or procedure, and only occasional independent decision-making or planning.

(Tr. at 18.) The ALJ concluded, in view of Claimant's residual functional capacity and based upon the testimony of Vocational Expert ("VE"), J. Herbert Pearis, that Claimant could return to his past relevant work activities of a security guard. (Tr. at 21-22.) On this basis, benefits were denied. (Tr. at 22-23.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 26, 1957, and was 48 years old at the time of the administrative hearing. (Tr. at 16, 338.) Claimant has a ninth education. (Tr. at 16, 338.) In the past, he worked as a security guard, fast food worker, cashier/stocker, pizza delivery person, newspaper delivery person, and construction laborer. (Tr. at 16, 21, 358-60.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in finding that Claimant could return to his past relevant work as a security guard, (2) failed to identify and resolve a conflict between the VE's and DOT's classifications of Claimant's past relevant work as a security guard,(3) erred in not assigning the opinion of Claimant's treating physician, Dr. Eitel, "proper weight," and (4) erred in not considering his pain and mental limitations in combination. The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision.

1. Past Relevant Work

Claimant first asserts that the ALJ erred in determining that he could return to his past relevant work as a security guard. (Doc. No. 10 at 2.) Specifically, the Claimant argues that the findings of the ALJ, based upon the testimony of the Vocational Expert ("VE") are in conflict with the Dictionary of Occupational Titles ("DOT"). (Doc. No. 10 at 2.) Claimant takes issue with the ALJ's failure to identify and resolve a conflict between the VE's classification of the job of security

guard as light level work and the DOT's classification of the job as medium level work. (Doc. No. 10 at 2.) The Commissioner asserts that the DOT classifies the job of security guard as light level work, not medium level work, and therefore, Claimant's argument is without merit. (Doc. No. 11 at 10.)

The Regulations provide that when it cannot be decided whether a claimant is disabled on medical evidence alone, the Agency will consider the individual's residual functional capacity together with his or her vocational background. See 20 C.F.R. § 404.1560(a) (2004). Residual functional capacity will be compared with the physical and mental demands of the claimant's past work, and if the person can still perform his past relevant work, he will be found not disabled. See id. § 404.1560(b). Past work experience is relevant when it is work that was performed in the last 15 years, which lasted long enough for the person to learn to do it and which was substantial gainful activity. See 20 C.F.R. § 404.1565(a). Substantial gainful activity is "work activity that is both substantial and gainful." Id. § 404.1572. Substantial work activity involves significant physical or mental activities, and work may be substantial even if it is done part-time. Id. § 404.1572(a). Gainful work activity is work done for pay or profit, whether or not a profit is realized. Id. § 404.1572(b).

In determining whether a Claimant can perform his past relevant work ("PRW"), the Regulations provide that the claimant will be asked to provide information about past work and that the Commissioner will consult other sources, including vocational experts and specialists, as well as the Dictionary of Occupational Titles ("DOT"), in obtaining necessary evidence about the PRW. See 20 C.F.R. § 404.1560(b)(2) (2004). With regard to the role of Vocational Experts ("VE") in this determination, the Regulations provide as follows:

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's

8

> past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

Id.

Social Security Ruling (SSR) 82-62 notes that "[t]he RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'" SSR 82-62, 1982 WL 31386, *3. This Ruling also requires the following specific findings of fact when the Commissioner determines that a Claimant can return to his or her past relevant work:

1. A finding of fact as to the individual's RFC.

2. A finding of fact as to the physical and mental demands of the past job/occupation.

3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, *4. There are two main tests for determining whether a claimant retains the capacity to perform his or her past relevant work: (1) whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he actually performed it; or (2) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. See Social Security Ruling 82-61, 1982 WL 31387. In using the second test, the DOT descriptions can be relied upon to define the job as it is usually performed in the national economy.

Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.' " Id. at *2.

In the instant case, the ALJ determined that Claimant could return to his past relevant work. (Tr. at 22.) In making this determination, the ALJ made the requisite findings under SSR 82-62. First, he found that Claimant has the RFC for medium work with additional limitations. (Tr. at 18.) With the exception noted below, Claimant takes no issue with this finding. Next, the ALJ found that Claimant's past relevant work as a security guard was unskilled and performed at the "light to medium" exertional level. (Tr. at 21.) In making this determination, the ALJ relied upon the testimony of the Claimant and VE at the administrative hearing. (Tr. at 21.) The VE testified that the security guard job, as performed by Claimant and consistent with the DOT, was semiskilled work at the light exertional level. (Tr. at 358.) The VE further testified that the duties of a security guard include making rounds either by vehicle or by foot and noting the guard's presence at each checkpoint, and "continually looking around to see if - - that everything is all right and that there are no problems." (Tr. at 358.) These functions are consistent with the security guard job as performed by Claimant. The VE, however, did not provide corresponding DOT numbers for the security guard job. Finally, the ALJ determined that Claimant's RFC permitted him to return to his past relevant work as a security guard as actually performed by him. (Tr. at 22.)

Claimant argues that the ALJ's conclusion that Claimant's past work was light to medium in exertion is inconsistent with the medium exertional level of a security guard job as classified by the DOT. The Commissioner identifies DOT code number 372.167-010, "Dispatcher, Security

Guard (business ser.)," which classifies the job at the light strength level. U.S. Department of Labor, Dictionary of Occupational Titles (DOT) § 372.167-010 (4th ed. 1991). (Doc. No. 11 at 10.) The undersigned has located two additional DOT code numbers for a security guard position, 372.667-034 and 372.667-038, which also classify the job at the light strength level. Accordingly, unless Claimant can identify a specific DOT code number which classifies the security guard position as requiring medium exertion, the undersigned finds that the ALJ's finding that the position requires light exertion is supported by substantial evidence.

2. Treating Physician

Claimant next alleges that the ALJ failed to give "proper weight" to the opinions of Dr. Eitel, Claimant's treating psychiatrist. (Doc. No. 10 at 2-3.) The Commissioner asserts that this argument is without merit. (Doc. No. 11 at 10-12.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted

above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2)(2004.)

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(2) (2004). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." Id. § 404.1527(b).

Claimant argues that the ALJ discounted Dr. Eitel's opinions primarily because the duration

12

of his treatment was less than one year. (Pl's Br. at 2-3.) The ALJ's decision, however, indicates that Dr. Eitel's opinions were given "reduced weight" not only because of the length of treatment, but also because his opinions were inconsistent with his and his physician assistant, Julie Hanna's, treatment records. (Tr. at 20.) Moreover, the ALJ found that Dr. Eitel's opinions could not be reconciled with the prior examination findings of Judith A. Lucas, MA, a licensed psychologist. (Tr. at 20.) The evidence of record indicates that from March 31, 2004, through January 19, 2005, Claimant treated with Dr. Douglas Eitel, M.D., primarily for his mental condition. (Tr. at 216-21, 303-06, 309-14.) On March 31, 2004, Dr. Eitel conducted a psychiatric evaluation of Claimant, noting on exam that Claimant had a constricted affect and dysthymic mood, logical and linear thoughts, some paranoid thoughts concerning his wife and their divorce, fair to good insight, and intact judgment. (Tr. at 216.) He also noted that Claimant denied suicidal thoughts. (Tr. at 216.) Dr. Eitel opined that Claimant had a GAF score of 60, thus suggesting only moderate limitations related to his mental condition. See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed., 1994) (a GAF score of 51-60 indicates "moderate symptoms" or "moderate difficulty in social, occupation, or school functioning."). Dr. Eitel's and Ms. Hanna's treatment notes further indicate that Claimant's mental symptoms, i.e., mood, anxiety, and depression, improved with medication therapy. (Tr. at 218, 220, 303-05, 309-10.) Their notes further indicate on more than one occasion that Claimant possessed good insight and judgment. (Tr. at 218, 307-08.) Nevertheless, on January 19, 2005, Dr. Eitel assessed Claimant as having "poor" ability to use judgment, relate to co-workers, deal with the public, and interact with supervisors. (Tr. at 312-13.) Dr. Eitel noted that Claimant had a "limited ability to handle stress which leads to decompensation and suicide attempts." (Tr. at 313.) This "poor" rating is inconsistent with Dr.

13

Eitel's GAF assessment score of 60. Furthermore, with the exception of some paranoid thoughts toward his wife, there is no evidence of psychotic thinking or suicidal thoughts during the course of Dr. Eitel's and Ms. Hanna's treatment. (Tr. at 216-21, 303-14.) With the exception of Dr. Eitel's GAF assessment, the record does not indicate that Dr. Eitel performed any independent testing. Accordingly, the undersigned finds that the ALJ's determination that Dr. Eitel's January 19, 2005, assessment was inconsistent with his and Ms. Hanna's treatment records is supported by substantial evidence.

The undersigned further finds that Dr. Eitel's assessment conflicts with the examination findings of Ms. Lucas. On mental examination conducted on October 3, 2003, Ms. Lucas noted that Claimant was easily confused, slow to process information but had logical thought processes, had a mildly restricted affect, and exhibited no disturbance of mood. (Tr. at 183.) Ms. Lucas opined that Claimant was mildly deficient in social functioning, within normal limits with persistence, and moderately slow in pace. (Tr. at 184.) These findings are inconsistent with the "poor" evaluation as assessed by Dr. Eitel. Furthermore, as the Commissioner notes, Dr. Eitel's evaluation is also inconsistent with the December 11, 2003, assessment by Debra L. Lilly, Ph.D. (Tr. at 186-203.) Dr. Lilly opined that Claimant was only mildly limited in activities of daily living and moderately limited in social functioning and concentration, persistence, and pace. (Tr. at 196.) She further opined that Claimant "retains the ability to learn and perform work-like activities in settings that require limited contact with others." (Tr. at 202.) The ALJ incorporated the limitations identified by Ms. Hanna and Dr. Lilly in his RFC assessment. Based on the foregoing, the undersigned finds that the ALJ properly evaluated Dr. Eitel's opinion. Although the ALJ considered the length of Dr. Eitel's treatment relationship with Claimant, it is clear that he also considered the remaining factors

outlined in 20 C.F.R. § 404.1527(d)(2)-(6)(2004). The ALJ reviewed Claimant's treatment records with Dr. Eitel and discussed how the assessed limitations were not supported by Dr. Eitel's or Ms. Hanna's treatment notes or by the other evidence of record. After a review of the entire record, the undersigned finds that the ALJ properly evaluated this opinion evidence in accordance with the applicable law and Regulations and accorded it the weight to which it was properly entitled. The ALJ's determination is therefore supported by substantial evidence.

3. <u>Combination of Impairments</u>

The ALJ found that none of Claimant's impairments, alone or in combination, were attended with the clinical signs and laboratory findings required to meet or medically equal any impairment described in the Listing of Impairments. Claimant argues that the ALJ did not properly consider the combined effects of his impairments. (Doc. No. 10 at 3-4.) The Commissioner asserts that this argument is without merit.

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2004). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." <u>Oppenheim</u>, 495 F.2d at 398. The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. <u>Id.</u> The cumulative or synergistic effect that the various impairments have on claimant's ability to work must

be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

Claimant alleges that the combination of his impairments makes it "clear that he could not sustain any type of employment on a full-time basis given his pain and mental limitations." (Doc. No. 10 at 4.) He argues that the ALJ's RFC determination "is not consistent with performance of the job of security guard" because he is unable to sustain concentration for extended periods of time and render independent decisions in stressful situations, which functions he asserts are frequently required of security guards. (Doc. No. 10 at 4.) Noting the requirements of the Regulations with regard to considering impairments in combination, the ALJ discussed Claimant's impairments, finding that his "medically documented impairments are collectively 'severe' within the meaning of the Regulations." (Tr. at 18.) The ALJ specifically found, however, that Claimant's impairments "are not, either individually or in combination, present at a level of severity sufficient to meet or medically equal the criteria of any condition contained in the Medical Listings." (Tr. at 18.)

The ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity, restricting him to a limited range of medium work. (Tr. at 18.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2004). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a

work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996). As previously noted, the ALJ thoroughly considered and summarized the medical evidence of record. (Tr. at 17-21.) In determining Claimant's RFC, the ALJ found that Claimant should avoid "extended periods of concentration" and engage in "only occasional independent decision-making or planning." (Tr. at 18.) At the administrative hearing, the ALJ defined the first limitation as not having "the ability to concentrate by actively mentally processing a task." (Tr. at 361-62.) Based on the previously stated duties of a security guard and the moderate concentration limitations identified by the medical evidence, the undersigned finds that the ALJ's RFC is consistent with the functions of a security guard and therefore, supported by substantial evidence. The ALJ noted that he had considered all of the evidence of record in making his decision. (Tr. at 22.) Accordingly, the undersigned finds that substantial evidence supports the ALJ's finding that Claimant did not have a combination of impairments which met or medically equaled a Listing.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and

then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: June 15, 2006.

R. Clarke VanDervort
United States Magistrate Judge